**Elsie Romaine MILLER, Plaintiff**

v.

**COLONIAL REFRIGERATED TRANS-PORTATION INCORPORATED, Donnie E. Mell, First South Leasing Company, M & J Financial Corporation (Leasing Division), Defendants.**

Civ. A. No. 77–999.

United States District Court,
M. D. Pennsylvania.

March 19, 1979.

Joseph G. Skelly, Ball & Skelly, Harrisburg, Pa., for plaintiff.

Harvey Freedenberg, G. Thomas Miller, McNees, Wallace & Nurick, Harrisburg, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

On October 30, 1978, the Plaintiff in the above-captioned case, Elsie Romaine Miller, filed a motion to quash a subpoena or in the alternative for a protective order pursuant to Rule 45(b) and Rule 26(c) of the Federal Rules of Civil Procedure. The subpoena in question is a subpoena duces tecum issued to Joseph G. Saxon, M.D. at the request of the Defendants and involves psychiatric records. In the motion, Plaintiff requests the Court to quash the subpoena, or in the alternative for a protective order, on the grounds that the psychiatric records contain matters that do not relate to the accident, contain matters that are privileged and contain matters personal in nature and private to Plaintiff, and to reveal such would cause harm and embarrassment to Plaintiff.

The motion to quash the subpoena will be denied, however we will issue a limited protective order.

This action arises out of a traffic accident on January 14, 1975, in which Plaintiff is alleged to have sustained, *inter alia*, mental and emotional injuries in the form of post-traumatic neurosis. Plaintiff is seeking to recover for her alleged personal injuries including the post-traumatic neurosis.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "Parties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action . . . ." (emphasis supplied). We believe there can be no dispute as to the relevancy of the material sought. Where compensation is sought for personal injury the health of the Plaintiff both before and after the accident may be inquired into. 4 Moore's Federal Practice ¶ 26.56[1]. This principle would seem to have equal applicability to an emotional or mental injury when that is what a Plaintiff seeks compensation for. The problem in this case revolves around the Plaintiff's assertion of her "professional privilege" as the privilege against disclosure of communications between physician and patient is applicable in discovery proceedings. 4 Moore's Federal Practice ¶ 26.60[2]. What is privileged under the law of evidence has been taken as a measure of what is privileged from discovery, and Rule 501 of the Federal Rules of Evidence provides that on state law claims or defenses, the question of privilege is governed by state law. 4 Moore's ¶ 26.-60[7].

The Plaintiff bases her objection to discovery of her psychiatric record on a privilege based in Pennsylvania statute and on a claimed constitutional right of privacy based upon both the Pennsylvania and United States Constitutions. The Plaintiff's assertion of privilege is based in large measure on the recent case from the Pennsylvania Supreme Court, *In re "B"*, Pa., 394 A.2d 419 (1978) in which Justice Manderino, joined by one other Justice, found a constitutional right of privacy in the prevention of disclosure of information revealed in the context of the psychotherapist-patient relationship. The Manderino opinion in that case creates a novel discovery problem in that it seeks to place the confidentiality of the psychotherapist-patient relation in the realm of constitutionally protected interests.

We will examine the statutory privilege first and then the asserted constitutional privilege. In Plaintiff's motion she indicated that there are matters which do not relate to the accident in her psychiatric records. If there are matters which are truly separable from the accident and not discoverable, these should not have to be revealed, however when a person puts in question the cause and effect of her mental or emotional state it would seem difficult if not impossible to separate some information on a person's mental and emotional condition from other information.

### PENNSYLVANIA PRIVILEGE STATUTES:

There are two Pennsylvania statutes that relate to the psychotherapist-patient privilege. Pennsylvania's physician-patient privilege statute, Act of June 7, 1907, codified by the Act of July 9, 1976, P.L. 586, 42 Pa.C.S.A. § 5929 (formerly 28 P.S. § 328), provides:

"§ 5929. *Physicians not to disclose information*

No physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries."

Another Pennsylvania statute, Act of March 23, 1972, P.L. 136, No. 52, now codified by the Act of July 9, 1976, P.L. 586, 42 Pa.C.S.A. § 5944 (formerly 63 P.S. § 1213) provides as follows:

"§ 5944. *Confidential communications to licensed psychologists*

No person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client."

■ Although the physician-patient privilege statute, 42 Pa.C.S.A. § 5929 speaks in terms of ". . . any information acquired in attending the patient", it has been held that the statute is limited to "communications" received from the patient and that the act does not prevent disclosure of information learned by a doctor through examination or observation. *In re "B"*, Pa., 394 A.2d 419 (1978); *In Re Phillips Estate*, 295 Pa. 349, 145 A. 437 (1929); *Panko v. Consolidated Mutual Insurance Co.*, 423 F.2d 41 (3d Cir. 1970); *Woods v. National Life and Accident Insurance Co.*, 347 F.2d 760 (3d Cir. 1965). The statute requires a privilege as to communications which tend to "blacken the character" of the patient. This requirement that disclosure of the communication would "blacken the character" has received a narrow interpretation. In *Skruch v. Metropolitan Life Insurance Co.*, 284 Pa. 299, 131 A. 186 (1925) the Pennsylvania Supreme Court concluded that the act's prohibition applies only to communications received from the patient which indicate that the patient was suffering from some "loathsome disease". See, *Soltaniak v. Metropolitan Life Insurance Co.*, 133 Pa.Super. 139, 2 A.2d 501 (1938). The privilege is further qualified in the statute by its provision that the physician may disclose information acquired in civil matters brought by the patient for damages on account of personal injuries. Whether or not the Plaintiff's psychiatric records could be considered to be such as would "blacken" her character, they would seem to clearly fall within the exception for civil matters brought by the patient for damages on account of personal injuries.

This narrow view of the privilege contained in 42 Pa.C.S.A. § 5929 was outlined by Justice Manderino's opinion in *In re "B"*, Pa., 394 A.2d 419 (1978). However, Justice Roberts pointed out in a concurring opinion that the opinion of Justice Manderino does not address the scope or effect of the Act of

744

March 23, 1972, P.L. 136, No. 52, 63 P.S. § 1213, Section 13, now codified at 42 Pa.C.S.A. § 5944 (formerly at 63 P.S. § 1213). Justice Roberts states in his concurring opinion:

> "Although this statute does not expressly apply to medical doctors engaged in the practice of psychotherapy, but rather only to those with graduate degrees in psychology, see id., § 6, 63 P.S. § 1206, it would be arbitrary to believe that the Legislature intended the scope of a patient's privilege to depend on whether the attending therapist is a medical doctor or a psychologist."

In re "B", Pa., 394 A.2d at 428. However, in recodifying this statute the Legislature specifically referred to the Act of March 23, 1972, P.L. 136, No. 52, and that statute deals only with psychologists and provides at 63 P.S. § 1203(2) that persons licensed to practice any of the healing arts in this Commonwealth shall be exempt from the provisions of the act. The resulting statutory tangle creates the incongruous result that a patient-psychologist relationship appears to retain more of a confidential privilege than a patient psychiatrist relationship.[1]

■ The statutory psychologist-patient privilege found at 42 Pa.C.S.A. § 5944 is not by its terms applicable to this case as this case involves the records of a psychiatrist. 42 Pa.C.S.A. § 5929, the statutory physician patient privilege, provides no privilege because the patient has brought a civil action for damages for the alleged condition which was the subject of the psychiatrist's treatment. Therefore, the Pennsylvania privilege statutes provide the Plaintiff no protection in this case. See generally, Annotation, 44 A.L.R.3d 24, "Privilege in Judicial or Quasi-Judicial Proceedings, Arising From Relationship Between Psychiatrist or Psychologist and Patient".

CONSTITUTIONAL PRIVILEGE:

The Plaintiff asserts that she has a constitutional privilege to retain the confidentiality of her patient-psychiatrist relationship based on Justice Manderino's holding in In re "B", Pa., 394 A.2d 419 (1978). In that case Justice Manderino said:

> "We conclude that in Pennsylvania, an individual's interest in preventing the disclosure of information revealed in the context of a psychotherapist-patient relationship has deeper roots than the Pennsylvania doctor-patient privilege statute, and that the patient's right to prevent disclosure of such information is constitutionally based. This constitutional foundation emanates from the penumbras of the various guarantees of the Bill of Rights, Griswold v. Connecticut, supra, [381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510] as well as from the guarantees of the Constitution of this Commonwealth, see especially, Article I, Section 1 (inherent right to enjoy and defend life and liberty, to protect reputation and pursue happiness; Article I, Section 2 (all political power is inherent in the people; Article I, Sections 3 and 4 (people's right to freedom of religion); Article I, Section 7 (freedom of press and speech guaranteed to every citizen so that they may speak, write, or print freely on any subject '. . . being responsible for the abuse of that liberty.'); Article I, Section 8 (people shall be secure in their persons, houses, papers, and possessions from unreasonable search and seizures); Article I, Section 9 (an accused in a criminal proceeding cannot be compelled to give evidence against himself); Article I, Section 11 (courts are to be open to all to provide remedy for injury done to reputation); Article I, Section 20 (right of as-

1. Justice Roberts attempts to deal with this situation in his concurring opinion in In re "B", Pa., 394 A.2d 416, at 428, n.2 (1978), by suggesting that if there is no privilege for the psychotherapeutic relation when the therapist is a medical doctor, there would be no bar to finding such protection under the common law. In light of an earlier ruling by the Pennsylvania Supreme Court in Commonwealth v. Sykes, 353 Pa. 392, 45 A.2d 43 (1946) cert. denied, 328 U.S. 847, 66 S.Ct. 1021, 90 L.Ed. 1620, that no common law privilege as to communications between physician and patient existed, it would seem the better course for this Court to defer to the Pennsylvania courts for the creation of such a right.

sembly); Article I, Section 23 (prohibition of the peacetime quartering of troops in any house without the consent of the owner); and Article I, Section 25 (reservation of powers in the people); and Article I, Section 26 (prohibition against the denial by the Commonwealth of the enjoyment of any civil right). In some respects these state constitutional rights parallel those of the Federal Constitution, see especially, Amendments 1, 3, 4, 5, and 9. In other respects our Constitution provides more rigorous and explicit protection for a person's right of privacy, e. g., Article I, Section 1, 3, 4, 7 and 11."

394 A.2d at 425.

As we have already mentioned, a threshold issue in this case is the weight to give the Pennsylvania Supreme Court's treatment of *In re "B"*, Pa., 394 A.2d 419 (1978). The Pennsylvania Supreme Court failed to articulate a majority view on the question of a constitutional psychotherapist-patient privilege. An opinion was written by Justice Manderino, apparently joined in by Justice Larsen, arguing for the privilege. 394 A.2d at 420. Two other justices concurred in the result filing no opinions. Justice Roberts filed a concurring opinion limited to approving the result on a statutory privilege basis. 394 A.2d at 426. It can be argued that while Chief Justice Eagen dissented he recognized some form of right of privacy privilege as he stated in his dissent, "Because of the important state interest in treatment and welfare of juveniles, I do not believe the right of privacy should prevail under the circumstances of this case." 394 A.2d at 430. Justice Pomeroy, joined by Justice Nix, dissented because they felt Justice Manderino's opinion gratuitously created a constitutional question when none was presented by the parties. 394 A.2d at 430. Since less than a majority of the Pennsylvania Supreme Court held the constitutional privilege view, the opinion of Justice Manderino must be treated only as an expression of the view of a minority of the court. See, *Greiner v. Volkswagenwerk Aktiengesellschaft*, 540 F.2d 85 (3d Cir. 1976).

To understand the opinions in *In re "B"*, Pa., 394 A.2d 419 (1978) it is helpful to look at the factual situation presented. *In re "B"* involved a contempt citation issued to a psychiatrist during the dispositional phase of a juvenile delinquency proceeding. As part of the state common pleas court's effort to determine proper placement for the delinquent juvenile, "B's" mother had received inpatient psychiatric treatment. Based upon this information the juvenile court's psychiatrist recommended obtaining the hospital records regarding "B's" mother and her treatment. The patient's clinic refused to release the records of "B's" mother's treatment without the patient's consent. The court held the clinic's representative in contempt and the appeal ensued. *In re "B"* presents a situation in which the patient is an interested third party to court proceedings rather than one in which a person has directly raised a claim based upon her emotional or mental condition as is presented in our case.

In *Caesar v. Mountanos*, 542 F.2d 1064 (9th Cir. 1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804, a psychiatrist was adjudged in contempt for refusing to obey an order directing him to answer questions relating to communications with a former patient. The California Evidence Code, § 1016 provides for a psychotherapist-patient privilege, however the privilege is not an absolute one, but rather provides for several exceptions including one known as the "patient-litigant exception". The patient-litigant exception was challenged in the *Caesar* case for, *inter alia*, violating the patient's federal constitutional right of privacy. The Ninth Circuit Court of Appeals in *Caesar* followed the opinion of the Supreme Court of California in *In re Lifschutz*, 2 Cal.3d 415, 85 Cal.Rptr. 829, 467 P.2d 557 (1970) and upheld the validity of the California evidentiary rule against an assertion that the psychotherapist-patient privilege is an absolute one under the constitutional right to privacy.

It was averred in *Caesar* that the alleged absolute constitutional protection for communications between patients and their psychotherapists, particularly in light of the

broader reach of doctor-patient privacy recognized subsequently to *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), was required by the nature of the relationship which depends on a patient's confidence that what he reveals to his psychotherapist will remain totally confidential. *Caesar* went on to assume a measure of constitutional protection for the psychotherapist-patient relationship and pointed out that such protection required a compelling state interest to overcome the privilege. The compelling state interest was found in seeing that truth is ascertained in legal proceedings in the state's courts of law, and the Court also alluded to a fairness requirement by stating "Every person who brings a lawsuit under our system of jurisprudence must bear disclosure of those facts upon which his claim is based." 542 F.2d at 1068.

Proposed Rule 504 of the Federal Rules of Evidence as promulgated by the United States Supreme Court, 56 F.R.D. 183, 240–41 (1973), ultimately rejected by Congress in favor of the more general Rule 501, provided for a psychotherapist-patient privilege quite similar to the California rule. The relevant portions of the proposed Rule 504 provided:

"(b) General rule of privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of his mental or emotional condition, including drug addiction, among himself, his psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

. . . . .

(d) Exceptions.

. . . . .

(3) Condition an element of claim or defense. There is no privilege under this rule as to communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

Advisory Committee's Note

. . . . .

Subdivision (d). The exceptions differ substantially from those of the attorney-client privilege, as a result of the basic differences in the relationships. While it has been argued convincingly that the nature of the psychotherapist-patient relationship demands complete security against legally coerced disclosure in all circumstances . . . the committee of psychiatrists and lawyers who drafted the Connecticut statute concluded that in three instances the need for disclosure was sufficiently great to justify the rise of possible impairment of the relationship

. . .

(1) [commitment proceedings]

. . . . .

(2) [court-ordered examinations]

. . . . .

(3) By injecting his condition into litigation the patient must be said to waive the privilege, in fairness and to avoid abuses. . . ."

56 F.R.D. 240–244.

■ The United States Supreme Court has recognized that the constitutional doctrine of privacy involves at least two different kinds of interests. *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64, 73 (1977). One involves the interest in making certain kinds of important decisions, such as those relating to marriage, procreation, contraception, family relationships, and child rearing and education. See, *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The other is the individual interest in avoiding disclosure of personal matters. *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64, 73 (1977).

The commentators have recognized a distinction between patients with physical complaints who will consult a physician regardless of whether confidentiality is guaranteed, and a person with emotional or mental problems because a psychotherapist's capacity to help his patients is completely dependent upon their willingness and ability to talk freely. See McCormick, Evidence § 99 at 213, n.9 (Cleary, 2d ed. 1972); United States Supreme Court's Proposed Federal Rules of Evidence, Advisory Committee's Note to Rule 504, 56 F.R.D. 183, 241–42 (1973). However, if such a privilege can be said to exist, it would not be absolute. *Lora v. Board of Education of the City of New York*, 74 F.R.D. 565 (E.D. N.Y.). The interests of the state in seeing that truth is ascertained in legal proceedings and fairness in the adversary process justify a patient-litigant exception to confidentiality such as the one provided for in the California Evidence Code, § 1016 and the proposed Rule 504 of the Federal Rules of Evidence. Therefore we will deny the motion to quash the subpoena.