414 A.2d 1087

**William DEFULVIO**

v.

**Hazel HOLST, M.D., Appellant.**

Superior Court of Pennsylvania.

Argued June 20, 1979.

Filed Nov. 27, 1979.

E. Paul Maschmeyer, Philadelphia, for appellant.

Arlene Freiman, Philadelphia, for appellee.

Before HESTER, HOFFMAN and CATANIA,* JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in (1) denying her motion for judgment N.O.V. or for a new trial on the issue of informed consent; (2) permitting the jury to consider as an element of damages appellee's loss of earnings; (3) denying her motion for a new trial based upon the excessiveness of the verdict. We reject appellant's contentions and, accordingly, affirm the order of the court below.

In late 1967, appellee, William DeFulvio, consulted Dr. Richard Oakey, a plastic surgeon, concerning feelings of "stuffiness" in his right ear and "fullness" in the right side of his neck which had persisted for two years. Dr. Oakey recommended that Mr. DeFulvio undergo an excisional biopsy for this condition. Dr. Oakey explained to Mr. DeFulvio that the biopsy would involve an incision about 1″ long and the removal of the suspected tumor on his parotid (salivary) gland. Mr. DeFulvio consented to the biopsy and scheduled hospital surgery to be performed by Dr. Oakey on January

---

* President Judge FRANCIS J. CATANIA of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by designation.

21, 1968. On January 19, 1968, however, Dr. Oakey cancelled the proposed surgery because he became ill. Dr. Oakey advised Mr. DeFulvio to consult with appellant, Dr. Hazel Holst, his assistant. Mr. DeFulvio visited appellant for the first time on January 21, 1968. According to Mr. DeFulvio,. appellant saw him for a period of two to four minutes and told him only that there might be a small growth on his parotid gland which "should be looked into." Upon appellant's recommendation Mr. DeFulvio was admitted to the hospital on February 20, 1968. That evening, appellant visited Mr. DeFulvio, examined him, and showed him a sketch of the incision she intended to make. Mr. DeFulvio testified that appellant did not explain to him that the operation she planned to perform (a parotidectomy) differed from a biopsy. He testified further that she did not inform him of the risks involved, the six-inch scar which would result, and the concavity in his. neck which would exist after the operation. Appellant's testimony refuted each of these allegations. On February 21, 1968, appellant performed a parotidectomy on Mr. DeFulvio. The operation left Mr. DeFulvio with a six-inch scar, concavity in his neck, pain, and a feeling of numbness which persisted at the time of trial.

Mr. DeFulvio filed suit against appellant, alleging that the operation was performed negligently and without his informed consent. The jury returned a verdict for appellant on the negligence issue and against appellant on the consent issue. The jury further awarded Mr. DeFulvio $50,000 in damages. This appeal followed.

■ "The law in this Commonwealth is that where a patient is mentally and physically able to consult about his condition, in the absence of an emergency, his 'informed consent' . . . , is a prerequisite to a surgical operation by his physician." *Cooper v. Roberts*, 220 Pa.Super. 260, 265, 286 A.2d 647, 649 (1971). Thus, " 'it will be no defense for a surgeon to prove that the patient had given his consent, if the consent was not given with a true understanding of the nature of the operation to be performed, the seriousness of

it, the organs of the body involved, the disease or incapacity sought to be cured, and the possible results.'" *Gray v. Grunnagle*, 423 Pa. 144, 166, 223 A.2d 663, 674 (1966) (quoting R. E. Powell, *Consent to Operative Procedures*, 21 *Md.L. Rev.* 189 (1966)). The test of informed consent to be applied by the factfinder is "whether the physician disclosed all those facts, risks and alternatives that a reasonable man in the situation which the physician knew or should have known to be the plaintiff's would deem significant in making a decision to undergo the recommended treatment." *Cooper v. Roberts, supra*, 220 Pa.Super. at 267, 286 A.2d at 650. In *Bowers v. Garfield*, 382 F.Supp. 503 (E.D.Pa.1974), the federal district court characterized this statement in *Cooper* as a codification of an "objective standard" of informed consent.

Appellant contends that the lower court permitted resolution of the issue to hinge upon Mr. DeFulvio's subjective understanding of appellant's explanation of the operation rather than the objective test of informed consent. We disagree. Mr. DeFulvio testified that appellant did not tell him that the operation she would perform on him differed from the biopsy originally planned by Dr. Oakey. He also testified that appellant never informed him of the consequences and risks incident to the parotidectomy. Although appellant asserts that Mr. DeFulvio was properly informed of the facts concerning his surgery and simply misunderstood the explanation, the jury did not accept appellant's version of the case. The proper role of the jury includes resolution of issues of fact and determination of the credibility of witnesses. *Mapp v. Wombucker*, 421 Pa. 383, 219 A.2d 681 (1966). Thus, considering the evidence in the light most favorable to the verdict-winner, *Atkins v. Urban Redevelopment Authority of Pittsburgh*, 263 Pa.Super. 37, 396 A.2d 1364 (1979), we conclude that the trial judge properly denied appellant's motion for judgment N.O.V. Similarly, the trial judge did not abuse his discretion in denying the motion for a new trial, *Gray v. Grunnagle, supra*, 423 Pa. at 165, 223 A.2d at 673, because the jury could have concluded within

the framework of the evidence that a reasonable person would find the seriousness of the operation and the risks attendant thereto material to his decision to undergo a parotidectomy.

Appellant further contends that the lower court erred when it presented Mr. DeFulvio's loss of earnings claim to the jury because proof thereof was speculative. Mr. DeFulvio presented evidence that he was an equal partner with his brother in a commercial refrigeration and air conditioning repair business which they began in 1952 and which was his sole source of income. He introduced into evidence his personal income tax returns for the years 1961 to 1975 which demonstrated that before the surgery he had enjoyed a steady increase in income from the business while his earnings dropped after the operation. He also introduced records of the partnership which showed that in 1967 he contributed more than half the billable hours of the partnership while in 1975 he contributed less than half. Mr. DeFulvio's testimony revealed that his reduced participation in the business was a result of the discomfort in his neck which he experiences when forced to work in cold temperatures as required for refrigeration repair work. Moreover, he testified that his incapacity forced him to decline business for the partnership.

"We have never held that damages that are not capable of *exact ascertainment* are for that reason not recoverable." *Ashcraft v. C. G. Hyssey and Co.*, 359 Pa. 129, 58 A.2d 170 (1948) (emphasis in original). Although the general rule precludes use of earnings of a business as proof of lost earning power, "[w]here, . . . , the business is small and the income which it produces is principally due to the personal services and attention of the owner, the earnings of the business may afford a reliable criterion of the owner's earning power." *Bell v. Yellow Cab. Co.*, 399 Pa. 332, 339, 160 A.2d 437, 441 (1960). "Therefore, 'Each case must depend on the nature and extent of the business, the amount of personal direction and labor of the party engaged in connection therewith, as well as the amount of capital

invested and the labor employed.'" *Id.*, 399 Pa. at 340, 160 A.2d at 442 (quoting *Baxter v. Philadelphia & Reading Railway Company*, 264 Pa. 467, 475, 107 A. 881, 884 (1919)). Thus, for example, in *Faber v. Gimbel Brothers*, 264 Pa. 1, 107 A. 222 (1919), our Supreme Court held that evidence of earnings from a partnership of which plaintiff was a member both before and after the accident was admissible to show decreased earning power as a result of the injury. The Court in *Faber* considered the fact that both partners devoted their entire time to the business and the nominal capital investment in the auto repair enterprise as factors relevant to its decision.

■ The business in question in this case was a small partnership which required the full time and attention of the two partners and employed no other workers. As in *Faber*, the business was a repair service, and therefore, required little capital investment. We conclude that this case is within the exception to the general rule preventing admission of evidence of earnings from a business to prove impaired earning capacity.

■ Related to appellant's contention that the evidence of damages was too speculative is her contention that the verdict was excessive. "Where a verdict has been sustained by the lower court, an appellate court will generally not reverse unless the verdict is so grossly excessive as to shock the appellate court's sense of justice." *Kemp v. Philadelphia Transportation Co.*, 239 Pa.Super. 379, 382, 361 A.2d 362, 364 (1976). The factors to be considered by the appellate court in making this determination include the severity of the injury; whether the injury is demonstrated by physical evidence; whether the injury is permanent; the plaintiff's ability to continue work; the out of pocket expenses; and the amount demanded in damages when the suit was instituted. *Id.*

■ The lower court did not err in sustaining the verdict of $50,000. Mr. DeFulvio has a permanent six-inch scar and concavity in his neck; he also suffers pain and numbness;

the scar and numbness are permanent; his ability to work is impaired; he paid for the first operation as well as a corrective operation to remove scar tissue from his neck; and he originally asked for damages in excess of $10,000. In view of these facts, the verdict was not excessive.

Order and Judgment affirmed.