**Irwin J. PREMACK and Audrey B. Premack, Plaintiffs,**

v.

**J.C.J. OGAR, INC., t/a Fratelli, Defendant.**

Civ. A. No. 91–3494.

United States District Court, E.D. Pennsylvania.

April 19, 1993.

James R. Kahn, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for plaintiffs.

Robert J. Powell, Francis J. Deasey, Deasey, Mahoney, Bender & McKenna, Ltd., Philadelphia, PA, for defendant.

## MEMORANDUM & ORDER

HALL, United States Magistrate Judge.

Presently before the court is the plaintiffs, Irwin J. and Audrey B. Premack's, Motion for a New Trial. For the reasons discussed below, the plaintiffs' motion is denied.

The plaintiffs' lawsuit arose from a head injury suffered by Mr. Premack on August 3, 1989. While dining at a local Philadelphia restaurant, Mr. Premack was struck on the head by two wooden doors approximately six-and-one-half feet high by two-and-one-half feet wide which suddenly fell from behind him. Plaintiffs' suit alleged that the negli-gence of the defendant was the cause of the accident and that they in turn had suffered various physical and psychological problems forever diminishing the quality of their lives.[1] As the plaintiffs are residents of Florida and the defendant operates out of Pennsylvania, federal court jurisdiction was founded upon diversity of citizenship.

Prior to trial, various motions in limine were filed by the defense seeking: 1) to compel production of the plaintiffs' medical records with regard to psychological treatment received in Florida from Dr. Herbert Goldstein prior to the accident; 2) to preclude the testimony of plaintiffs' proposed expert in neuropsychology, John E. Gordon, Ph.D.; and 3) to preclude the testimony of plaintiffs' proposed expert in economics, Jerome E. Staller, Ph.D.

Following written argument as to whether the plaintiffs' medical records in Florida might be privileged, the Honorable Clifford Scott Green, Senior District Judge for the Eastern District of Pennsylvania, ordered production of the documents on June 3, 1992.[2] The case was subsequently referred to me for trial by consent of the parties.[3] Thereafter, following written argument prior to trial and oral argument at trial, pursuant to Federal Rule of Evidence 403, I disallowed any testimony by Dr. John E. Gordon, during both the plaintiffs' case-in-chief and rebuttal, as being merely cumulative. The plaintiffs' proposed economic expert, Jerome E. Staller, Ph.D., was allowed to testify at trial, but he was precluded from testifying with regard to the plaintiffs' corporate tax returns from the years 1984–1986. The jury subsequently returned a verdict in favor of the plaintiff Irwin J. Premack for $13,000 and for the plaintiff Audrey B. Premack for $2,000. This motion for a new trial followed.

In their motion for a new trial, the plaintiffs raise the following four claims: (1) the court committed prejudicial error when it granted the defendant's motions to compel production of the records of Herbert Goldstein, Ph.D.; (2) the court committed preju-

---

1. Plaintiffs' Complaint (docket # 1) at ¶¶ 12–16.

2. Order of June 3, 1992 (docket # 21).

3. Consent to Proceed before a United States Magistrate Judge (docket # 24).

dicial error when it barred the plaintiffs from calling their expert neuropsychologist, John E. Gordon, Ph.D. to testify on direct or as a rebuttal witness; (3) the court committed prejudicial error when it barred the plaintiff's economic expert, Jerome M. Staller, Ph.D. from testifying about a corporate tax return; (4) the jury's damage award was so low as to be against the weight of the evidence.[4]

■ Under Federal Rule of Civil Procedure 59(a):

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. . . .

F.R.C.P. 59(a). A new trial may therefore be granted on the grounds that: the verdict is against the great weight of the evidence, the court has committed any prejudicial error of law, or for any other equitable reason. *Pepe v. Jayne,* 761 F.Supp. 338, 341 (D.N.J. 1991). The decision to grant or deny a new trial, however, is " 'confided almost entirely to the . . . discretion . . . of the trial court.' " *Shanno v. Magee Industrial Enterprises,* 856 F.2d 562, 567 (3rd Cir.1988) (quoting *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980)). It therefore remains to be determined whether the grounds asserted by the plaintiffs merit a new trial in this case.

## I. GROUND 1

■ Federal Rule of Evidence 501 states in part that:

> . . . in all civil actions and proceedings, with respect to an element of a claim or defense to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Because this is a diversity case, state law of privilege applies. Federal Rule of Evidence 501 expresses no opinion, however, as to which state's law of privilege will apply should a potential conflict arise, as it may

have here. *In re Westinghouse Electric Corp.,* 76 F.R.D. 47, 53 (W.D.Pa.1977). In such a situation, the Third Circuit has held that the conflicts law of the forum state determines which state's law of privilege applies. *Samuelson v. Susen,* 576 F.2d 546, 551 (3rd Cir.1978).

■ However, the initial question to be addressed when a choice of law question appears to be at issue is whether a choice must really be made. *Coons v. Lawlor,* 804 F.2d 28, 30 (3rd Cir.1986). If there is no conflict, no choice of law need be made since both state laws will be the same. *Id.*

■ The Florida Evidence Code § 90.-503(4)(c) provides that, with regard to the psychologist-patient privilege:

> (4) There is no privilege under this section:
>
> (c) For communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense . . .

A civil litigant in Florida thus implicitly waives his or her claim of privilege when placing his or her mental condition directly at issue in a proceeding.

■ Pennsylvania's equivalent statute, 42 Pa.C.S.A. § 5944 (Supp.1992), is not as clear, however, and, at least facially, could be seen as granting an absolute privilege in both civil and criminal cases. *Thorne v. Universal Properties, Inc.,* 1987 WL 7683, *2 n. 2, 1987 U.S. Dist. LEXIS 1906, *3 n. 2 (E.D.Pa. 1987). Pennsylvania's statute provides:

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or

---

4. Plaintiffs' Motion for a New Trial (docket # 40) at ¶¶ 1–4.

proscribed by law between an attorney and client.

42 Pa.C.S.A. § 5944 (Supp.1992).

With regard to criminal matters, the Pennsylvania Supreme Court has held that the psychologist-patient privilege is absolute and is not outweighed by a defendant's due process rights. *Commonwealth v. Wilson,* 529 Pa. 268, 602 A.2d 1290, 1295 (1992), *cert. denied,* —— U.S. ——, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992). The court in *Wilson* interpreted the statute as preventing disclosure of all confidential communications by victims to a psychologist "whether in the form of live testimony or through the production of records or other documents." *Id.* As the Superior Court earlier had explained, there is a strong public policy in Pennsylvania favoring an absolute privilege from disclosure, a policy that protects an interest extrinsic from the truth-finding process. *Commonwealth v. Kyle,* 367 Pa.Super. 484, 533 A.2d 120, 126 (1987), *allocatur denied* 518 Pa. 617, 541 A.2d 744 (1988). The psychologist-patient privilege was designed to promote effective treatment and to insulate a client's private thoughts from public disclosure. *Id.,* 533 A.2d at 126–128. The court also emphasized, however, that in a criminal case application of the privilege produces a balance—neither the prosecution nor the defense can use the information. *Id.* at 130.

The application and function of the privilege in a civil case is not as clear, however. One lower court in Pennsylvania excluded psychological information in a civil personal injury action even though the plaintiff had placed her mental condition directly at issue in the case. *Kalenevitch v. Finger,* 6 D. & C.4th 658 (Dauphin County 1990), *affirmed,* 407 Pa.Super. 431, 595 A.2d 1224 (1991). On appeal, however, the Pennsylvania Superior Court refused to address whether a plaintiff should be entitled to invoke the psychologist-patient privilege when she has placed her mental condition directly at issue in a civil action, finding that this argument had not been properly preserved for appeal. *Kalenevitch v. Finger,* 407 Pa.Super. 431, 595 A.2d 1224, 1228–29 (1991). And to this date, the Pennsylvania Supreme Court has not yet addressed this particular issue.

█ In interpreting state statutes, only decisions of the state's highest court are binding upon federal courts sitting in diversity. *Gruber v. Owens–Illinois, Inc.,* 899 F.2d 1366, 1369 (3rd Cir.1990). If there is no such decision to bind the court, "the federal court is called upon to predict how the state court would resolve the issue should it be called upon to do so." *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 378 (3d Cir.1990) (citing, *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967)). The federal judiciary's role in such an instance is "not to form or create state law but to decide the case as we believe it would have been decided by the state's highest court had the case arisen in the state court system." *Id.* In predicting the response of the Pennsylvania Supreme Court to a previously unaddressed question, the court must examine: (1) what the Pennsylvania Supreme Court has said in related areas; (2) the decisional law of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting the state law; and (4) decisions from other jurisdictions that have discussed the issue the court faces. *Gruber,* 899 F.2d at 1369–1370.

█ In Pennsylvania, a claim of privilege does not necessarily turn on the particular statutory or constitutional ground on which it rests. *Thorne,* 1987 WL 7683, *1, 1987 U.S.Dist. LEXIS 1906, *2 (citing *In re "B",* 482 Pa. 471, 394 A.2d 419 (1978); *Miller v. Colonial Refrigerated Transportation Inc.,* 81 F.R.D. 741, 745 (M.D.PA.1979)). For example, although arguably clear on its face, Pennsylvania's psychologist-client privilege has been interpreted as not requiring exclusion of psychologist-client communications in parental rights termination cases because of the magnitude of the issues at stake in such a case. *Matter of Adoption of Embick,* 351 Pa.Super. 491, 506 A.2d 455, 461 (1986). Similarly strong societal concerns mandate the conclusion that in a civil action in which one's mental condition is placed directly at issue the privilege afforded an individual by 42 Pa.C.S.A. § 5944 is implicitly waived. *See Thorne,* 1987 WL 7683, *1, 1987 U.S.Dist. LEXIS 1906, *4–*5.

To allow a plaintiff to hide a previously existing condition behind a claim of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of fairness and justice. *See Thorne,* 1987 WL 7683, *2, 1987 U.S.Dist.LEXIS 1906, *5 ("If a plaintiff seeks damages for alleged emotional or psychological injuries, the defendant's case ought not be limited by the plaintiff's decision not to introduce available medical or psychological testimony that bears directly on the truth of the claim."). Because such a result is unreasonable and unfair, it can hardly be deemed to have been what the Pennsylvania legislature intended. *See Evcco Leasing Corp. v. Ace Trucking Co.,* 828 F.2d 188, 195 (3rd Cir.1987) (The court held that statutes are to be interpreted to receive a sensible construction so as to avoid injustice or oppression.). In this regard, it is worth noting that in Pennsylvania the physician-patient privilege is implicitly waived if a civil suit is brought placing that individual's physical condition directly at issue. 42 Pa. C.S.A. § 5929 (1982). Certainly, Pennsylvania's policy of encouraging individual's to seek medical treatment for physical problems when such treatment is required is no less important than its policy of encouraging individuals to seek psychological treatment when such treatment is required, yet the Pennsylvania legislature has decided that an implied waiver will not hamper its social policy with regard to the physician-patient privilege.

The decisions of the Pennsylvania courts finding an absolute privilege in criminal matters are not to the contrary. First of all, a victim in a criminal matter does not place his or her mental condition directly at issue as does a plaintiff in a civil suit. Secondly, Pennsylvania courts have clearly made a choice that in criminal matters encouraging the victims of crime to seek any and all psychological help necessary for a healthy return to society supersedes any diminution in the truth-seeking function of the courts. See, *Kyle,* 533 A.2d at 126–127. Absolute confidentiality has been deemed the only way to ensure that such help will be sought.

In a civil matter, however, there are numerous ways—other than an absolute bar—to ensure that both an individual's privacy and the truth-seeking function of the courts are sufficiently protected. First of all, an individual is always free to leave his or her mental condition out of a complaint—thus assuring continued confidentiality, *Thorne,* 1987 WL 7683, *2, 1987 U.S.Dist. LEXIS 1906, *7, an option that was afforded the Premacks in this case.[5] Second, if placed at issue, the privilege is only waived as to those communications "directly related" to the incident that is the subject matter of the litigation. *Thorne,* 1987 WL 7683, *2, 1987 U.S.Dist. LEXIS 1906, *5–*6. Finally, it should be noted that an implied waiver simply ensures that an individual not receive more damages than he or she deserves. Recovery will not necessarily be barred by release of information revealing a pre-existing condition. A plaintiff is always free to argue that such a condition has been aggravated by a recent accident or injury; he or she is simply precluded from falsely alleging that such a condition was caused by that injury.

As other federal courts have noted, implied waivers of privilege are justified by "interests of the state in seeing that truth is ascertained in legal proceedings and fairness in the adversary process." *Miller v. Colonial Refrigerated Transportation, Inc.,* 81 F.R.D. 741, 747 (M.D.Pa.1979); *see also Caesar v. Mountanos,* 542 F.2d 1064, 1069 (9th Cir. 1976). This court therefore believes that if the Pennsylvania Supreme Court were to decide this issue it would hold that when an individual in a civil action places his or her mental condition directly at issue the psychologist-patient privilege is implicitly waived.

■ Since the laws of Pennsylvania and Florida actually provide for the same waiver in civil suits, there is a "false conflict" only. No conflict of laws analysis is necessary, *Coons v. Lawlor,* 804 F.2d at 30, and Pennsylvania's law of privilege applies. There was, therefore, no error in compelling the production of plaintiffs' medical records as the plaintiffs waived the privilege by putting their mental condition directly at issue.

**5.** Order of June 3, 1992 (docket # 21).

## II. GROUND 2

■ Federal Rule of Evidence 403 provides in part that:

Although relevant, evidence may be excluded if its probative value is substantially outweighed . . . by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

F.R.E. 403. A trial judge's decision to admit or exclude evidence under F.R.E. 403 may not be reversed unless it is "arbitrary and irrational." *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 187 (3rd Cir.1990). As the Third Circuit has noted, a trial judge's decision under F.R.E. 403 is to be reviewed "with substantial deference." *Petree v. Victor Fluid Power, Inc.*, 887 F.2d 34, 40 (3rd Cir.1989).

■ Plaintiffs in their motion for a new trial assert numerous grounds upon which the trial court erred in precluding Dr. Gordon's testimony.[6] During arguments at trial, however, the plaintiffs' main contention was that Dr. Gordon was needed because he was a live, local expert and would thus counteract any possible favoritism that the Pennsylvania jury might show toward the defense's live, local experts. In any event, the testimony sought to be introduced by the plaintiffs was deemed to be cumulative, and the validity of that determination is bolstered by the fact that the plaintiffs' medical expert, Dr. Michael D. Eastridge, testified in his videotaped deposition on the very issues which Dr. Gordon would supposedly have addressed.[7] Therefore, it cannot be said that the trial court's exclusion of the testimony of Dr. John E. Gordon was erroneous.

## III. GROUND 3

■ In his lawsuit, plaintiff sought to establish his lost future earnings through reference to his pre-accident earnings. It is plaintiff's allegation that the sole element of Irwin Premack's pre-accident earnings is the income of his corporation, Premack and Associates.[8] Plaintiff thus contends that Dr. Staller should have been permitted to testify with regard to certain corporate tax returns from the years 1984–1986 as they were relied upon by Dr. Staller in reaching his conclusion that Mr. Premack's "earnings are totally tied to the fortunes of the business which he owns and operates himself."[9] In reality, plaintiff's dispute boils down to one return in particular, the 1984 corporate tax return of Premack Research Corporation in which gross income of approximately $300,000 was reported.[10]

In Pennsylvania, the rule was early established that "Ordinarily, earnings which represent the result of combined capital and personal services is not capable of establishing the earning power of the servitor." *Bell v. Yellow Cab Company*, 399 Pa. 332, 160 A.2d 437, 441 (1960). While it is true that in Pennsylvania the earnings of a business may afford a reliable criterion of the owner's

---

**6.** Plaintiffs' Memorandum of Law in Support of the Motion for a New Trial (docket # 40) at pp. 3–4.

**7.** Transcript of Videotape De Bene Esse Deposition of Michael D. Eastridge, Ph.D. (docket # 43):

Page 14: Dr. Eastridge reviewed the neuropsychological evaluation prepared by Dr. Gordon.

Page 15: Dr. Eastridge diagnoses Irwin J. Premack as suffering from organic brain syndrome, an organic personality disorder, and an adjustment reaction.

Page 16: Dr. Eastridge attributes Mr. Premack's condition to the blow he suffered to his head on August 3, 1989.

Page 25: Dr. Eastridge testifies that Mr. Premack was suffering from no preexisting dementia at the time of his accident.

Page 30: Dr. Eastridge testifies that Mr. Premack's condition is permanent with no hope of improvement.

Pages 30–32: Dr. Eastridge testifies that Mr. Premack has suffered a 20% impairment in his ability to function in the job market as a whole.

Page 60: Dr. Eastridge testifies as to Mr. Premack's results on both the Verbal and Performance sections of an IQ test.

**8.** Plaintiff's Answer to Defendant J.C.J. Ogar, Inc.'s Motion in Limine (docket # 26) at ¶ 3.

**9.** Plaintiff's Memorandum of Law in Opposition to Defendant J.C.J. Ogar, Inc.'s Motion in Limine (docket # 27) at p. 3.

**10.** Premack Research Corporation was the predecessor to Premack and Associates. It should be noted that Dr. Staller's report erroneously refers to this 1984 return as documenting the gross income of Premack and Associates; it does not. As mentioned, the 1984 return documents the gross income of Premack Research Corporation, an entity which had ceased to exist as of 1986.

earning power where the business is small and the income which it produces is principally due to the personal services and attention of the owner, *Bell*, 160 A.2d at 441 (Pa.1960); *Defulvio v. Holst*, 272 Pa.Super. 221, 414 A.2d 1087, 1090 (1979), it is equally clear that this exception has been applied only where the business involved could truly be considered "small". *E.g., Bell*, 160 A.2d 437 (a pet and sport supply store run out of the first floor of the plaintiff's home); *Defulvio v. Holst*, 414 A.2d 1087 (a two-man refrigeration repair business). Further, the Pennsylvania Supreme Court has recognized that the nature and extent of the business involved is a key factor in determining whether to apply this exception. *Bell*, 160 A.2d at 442. In this case, because he had a number of employees working for him at Premack Research Corporation, it cannot be said that Mr. Premack's market research firm fits into the class of businesses traditionally treated as falling within this limited exception.

In addition, the evidence very clearly contradicts the plaintiff's allegation that Mr. Premack's income and the earnings of Premack and Associates are virtually interchangeable. In 1984, for example, although Premack Research Corporation reported gross income of approximately $300,000, Mr. Premack only reported income of $29,000. The law requires that a claim for damages be supported by a *reasonable* basis for calculation. *Kaczkowski v. Bolubasz*, 491 Pa. 561, 421 A.2d 1027, 1030 (1980). Reliance on this 1984 corporate tax return to establish Mr. Premack's pre-accident earning power would have been unreasonable and any mention of it was properly excluded at trial.[11]

## IV. GROUND 4

 With regard to the award of a new trial due to the alleged inadequacy of a jury's award:

> The Court is not free to set aside the verdict merely because it may have awarded a different amount of damages but may do so only if the proceedings have been tainted by appeals to prejudice or if the verdict, in light of the evidence, is so un-

reasonable that it would be unconscionable to permit it to stand. *University Marketing & Consulting, Inc. v. Hartford Life & Accident Ins.*, 413 F.Supp. 1250, 1264 (E.D.Pa.1976). If there is ample evidence to justify a judgment, it should stand whether deemed low or high by the court, *Mainelli v. Haberstroh*, 237 F.Supp. 190, 193 (M.D.Pa.1964), *aff'd*, 344 F.2d 965 (3rd Cir.1965), for "it is not the prerogative of the Court to arbitrarily substitute its judgment for that of the jury." *Id.*

 Measured against this highly deferential standard and in light of the resolution of the aforementioned evidentiary issues, it cannot be said that the jury's award in this case was so low as to be unconscionable. For this and the previously stated reasons, plaintiffs' motion for a new trial is denied.

---

**11.** It should also be noted that, despite the ruling precluding this evidence at trial, Dr. Staller on cross-examination still managed to insert a reference to the 1984 corporate tax return.