## Nardella v. Datillo

*Howard B. Krug,* for plaintiffs.

*Philip J. Murren,* for defendant Roman Catholic Diocese of Harrisburg.

*F. Lee Shipman,* for defendant Peregrin.

TURGEON, *J.,* September 3, 1996—On January 6, 1996, the plaintiffs filed a complaint against the defendants in the above-captioned consolidated action, seeking various damages as a result of, inter alia, defendant Peregrin having a romantic and sexual relationship with plaintiff Aileen Nardella while providing her with counseling following the death of her mother. Defendant Peregrin was formerly a priest with the Good Shepherd Church of Camp Hill. Demurrers and other preliminary objections filed in this case were argued before a panel of this court earlier this year. Discovery, however, continues which has resulted in the filing of numerous discovery motions, only one of which is the subject of this opinion and order.

The matter currently under consideration involves the plaintiffs' motion for protective order pursuant to Pa.R.C.P. 4012(a) to quash 11 subpoenas and notice of depositions served by all of the defendants except Peregrin, "diocesan" defendants, on plaintiff Aileen Nardella's mental health providers. The diocesan defendants seek to obtain "any and all therapy and or counseling records or notes, test results correspondence, billing records, etc. pertaining to Aileen Nardella." The plaintiffs assert that all of the information sought by the diocesan defendants is privileged under section 5944 of the Judicial Code, section 7111 of the Mental Health Procedures Act and section 1690.108 of the Pennsylvania Drug and Alcohol Abuse Act. 42 Pa.C.S. §5944, 50 P.S. §7101 et seq., 71 P.S. §1690.101 et seq. The diocesan defendants counter that the plaintiffs have waived raising these privileges by putting Aileen

Nardella's mental condition directly at issue in this action. We agree with the diocesan defendants that to the extent the plaintiff has placed her mental condition directly at issue, these privileges have been waived.

Section 5944 recognizes a privilege of confidential communications between patients and their psychiatrists and licensed psychologists:

"No psychiatrist or person who has been licensed under the Act of March 23, 1972 (P.L. 136, no. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client."

The Mental Health Procedures Act sets forth the following privilege:

"All documents concerning persons in treatment shall be kept confidential and, without the person's written consent may not be released or their contents disclosed to anyone except:

"(1) those engaged in providing treatment for the person;

"(2) the county administrator, pursuant to section 110;

"(3) a court in the course of legal proceedings authorized by this Act; and

"(4) pursuant to federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a federal agency.

"In no event however, shall privileged communications, whether written or oral, be disclosed to anyone

without such written consent. This shall not restrict the collection and analysis of clinical or statistical data by the department, the county administrator or the facility so long as the use and dissemination of such data does not identify individual patients. Nothing herein shall be construed to conflict with section 8 of the Act of April 14, 1972 (P.L. 221, no. 63), known as the 'Pennsylvania Drug and Alcohol Abuse Control Act.' "

Section 1690.108 of the Pennsylvania Drug and Alcohol Abuse Act provides as follows:

"(a) . . . .

"(b) . . . .

"(c) All patient records and all information contained therein relating to drug or alcohol abuse or drug or alcohol dependence prepared or obtained by a private practitioner, hospital, clinic, drug rehabilitation or drug treatment center shall remain confidential and may be disclosed only with the patient's consent and only (i) to medical personnel exclusively for purposes of diagnosis and treatment of the patient or (ii) to government or other officials exclusively for the purpose of obtaining benefits due the patient as a result of his drug or alcohol abuse or drug or alcohol dependence except that in emergency medical situations where the patient's life is in immediate jeopardy, patient records may be released without the patient's consent to proper medical authorities solely for the purpose of providing medical treatment to the patient."

Plaintiffs rely principally on a 1992 case in which I held that the psychiatrist/psychologist-patient privilege was absolute and not subject to waiver. *McInnis v. John Wannamaker's Inc.,* 112 Dauph. Rep. 130 (1992). In that case, plaintiff alleged that in addition to the physical injuries she sustained from an escalator accident she also suffered "mental anguish, suffering and humili-

ation." Defendants sought medical records from a pain and treatment center and plaintiff asserted the material was privileged under section 5944. In holding that plaintiff did not waive the psychologist-patient privilege by asserting a claim for damages related to her mental condition, I relied on cases in which the appellate courts had held, albeit in criminal cases, that the privilege was absolute. *Commonwealth v. Kyle,* 367 Pa. Super. 484, 533 A.2d 120 (1987), *alloc. denied,* 518 Pa. 617, 541 A.2d 744 (1988); see also, *Commonwealth v. Wilson,* 529 Pa. 268, 602 A.2d 1290 (1992), *cert. denied,* 504 U.S. 977, 112 S.Ct. 2952 (1992).

However, since *McInnis* was decided, the Commonwealth Court has held that the privilege may be waived, in civil actions, "where the client places the confidential information at issue in the case." *Rost v. State Board of Psychology,* 659 A.2d 626, 629 (Pa. Commw. 1995) (citing *Premack v. J.C.J. Ogar Inc.,* 148 F.R.D. 140 (E.D. Pa. 1993)). See also, *Loftus v. Consolidated Rail Corp.,* 12 D.&C.4th 357, 359 (Cumb. C.P. 1991). Thus, it is controlling appellate law under *Rost* that where a plaintiff in a civil suit places his or her mental condition directly at issue, the privilege is waived as to that condition and the plaintiff must either consent to the disclosure of the information at issue or be precluded from pursuing claims related to his or her emotional and mental condition. *Rost* and *Premack, supra.* The diocesan defendants note that waiver is necessary in such cases since it would be fundamentally unfair to allow a litigant to make allegations about, and claim damages on the basis of, a mental or emotional condition and at the same time prevent a litigation adversary from testing those allegations or examining the asserted causal nexus. As set forth in *Premack,* "[t]o allow a plaintiff to hide a previously existing condition behind a claim

of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of fairness and justice." *Id.* at 145. (citation omitted)

With regard to the other privileges raised by the plaintiffs, they too are subject to waiver, for the same reasons as set forth above. See *Hahnemann University Hospital v. Edgar,* 74 F.3d 456, 463-64 (3d Cir. 1996) and *Nicholaides v. Weber,* 133 Pitts. Leg. J. 260, 261 (1985) (the statutory privilege set forth in section 7111 of the Mental Health Procedures Act is subject to waiver); *O'Boyle v. Jensen,* 150 F.R.D. 519, 522 (M.D. Pa. 1993) (the statutory privilege set forth in section 1690.108 of the Drug and Alcohol Abuse Act is subject to waiver).

However, the scope of the waiver is not without limits. As stated in *Premack,* waiver extends only "as to those communications 'directly related' to the incident [or condition] that is the subject matter of the litigation."[1] *Id.* at 145.

The allegations set forth in the complaint directly place plaintiff Aileen Nardella's mental condition at issue. For example, she alleges she suffered psycho-

---

1. Accordingly, insofar as *McInnis* held that waiver cannot occur in a civil action, it was overruled by *Rost.* However, the result in that case may have still been correct in that the mental condition alleged by the plaintiff was not an independent psychological injury but an allegation of general mental suffering of the type that often accompanies such personal injury actions. See *Nicholaides v. Weber, supra* at 261, 262 n.10. (Judge Wettick noted that his holding that a waiver under section 7111 of the Mental Health Procedures Act occurred where a plaintiff alleged severe emotional trauma requiring psychiatric treatment did "not necessarily extend to a personal injury action in which there is no claim for mental health treatment and recovery is sought only for the emotional distress which is ordinarily associated with the injury.")

logical problems prior to becoming involved with defendant Peregrin, that she was in a "fragile, dependent and trusting state" while involved with him, that her "alter personalities uncontrollably, without her knowing" took over during her sexual involvement with Peregrin, that while involved with him, she was "mentally unstable and in need of psychological intervention," that she was being treated for severe emotional problems at the Harrisburg Institute of Psychiatry during the period of her sexual involvement with Peregrin, that following the termination of her sexual involvement with Peregrin, she was hospitalized for psychological treatment of multiple personality disorder, that her mental problems were so severe that they prevented her from consenting to any sexual contact with Peregrin and that his conduct was the direct and proximate cause of her multiple personality disorder, post-traumatic stress disorder, depression, obsessive/compulsive disorder, family and marital discord, physical deterioration, emotional and mental pain and suffering, nightmares and flashbacks. (Complaint ¶¶ 16, 29, 37, 38, 49, 56, 59, 73, 75.) Thus, she has placed these conditions and treatment of them, directly at issue.

Accordingly, we enter the following:

## ORDER

And now, September 3, 1996, plaintiffs' motion for protective order is hereby denied. Plaintiff Aileen Nardella is directed to execute the necessary releases to permit compliance with the diocesan defendants' subpoenas, or, in the alternative, be barred at trial from introducing any evidence of Aileen Nardella's psychological, emotional or medical condition either prior to or after her involvement with Peregrin.

All psychological records relating to prior and current diagnoses of the following shall be provided to the diocesan defendants:

(1) Multiple personality disorder, post-traumatic stress disorder, depression, obsessive/compulsive disorder, family and marital discord.

(2) Mental disability which caused plaintiff Aileen Nardella, as of the relevant time period, to be "fragile, dependent, trusting, mentally unstable and in need of psychological intervention," including all treatment occurring during and after her alleged sexual involvement with defendant Peregrin.

(3) The court will view *in camera,* any records about which there remains a dispute as to discoverability.