**GREAT WEST LIFE ASSURANCE COMPANY**

v.

**Mark LEVITHAN.**

**Civ. A. No. 93–CV–1560.**

United States District Court, E.D. Pennsylvania.

Feb. 16, 1994.

James Michael Beck, Pepper, Hamilton & Scheetz, Philadelphia, PA, for plaintiff.

Francine D. Wilensky, James C. Schwartzman, Schwartzman & Associates, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

The instant civil action has been once again brought before this Court by an Emergency Motion of the Plaintiff–Counterclaim–Defendant, Great West Life Assurance Company, for a Protective Order Against Tampering with Great West's Expert Witness and for an Order Compelling Defendant, Mark Levithan, to Submit to a Medical Examination. In response thereto, Mr. Levithan has filed a Cross–Motion for a Protective Order and in Limine to preclude Great West from employing his treating physician-surgeon, Dr. Frederick Simeone, as its expert witness at trial and to preclude Dr. Simeone from examining him on behalf of the plaintiff insurance company. In accordance with the reasoning set forth below, the motions for protective order and in limine are denied and the motion to compel is granted.

## I. HISTORY OF THE CASE

This case has its origin in a disability insurance policy issued by the plaintiff Great West to the defendant under which he subsequently made a claim for disability benefits in May, 1991, claiming that he was totally disabled from his work as a corporate executive officer due to a herniated disc in his neck. Great West thereafter began paying disability benefits to Mr. Levithan in the amount of $900 per month.

Approximately one month prior to making his initial claim for disability benefits, Mark Levithan was referred to Frederick A. Simeone, M.D., a neurosurgeon, for treatment and care of his herniated disc. Dr. Simeone

performed cervical laminectomy surgery on Mr. Levithan without success on April 17, 1991. A second attempt to surgically correct the problem was therefore made on May 1, 1991. Dr. Simeone apparently saw Mr. Levithan only once in follow-up after the second surgery and discharged him from his care.

Although it was and is the defendant's contention that he never recovered from the surgery and is in such constant pain that he remains totally disabled, Great West, through its disability adjusting arm, the Paul Revere Life Insurance Company, has taken the position that Mr. Levithan is *not* totally disabled and that since he has effectively returned to work, he is not entitled to receive any further disability payments. Great West therefore brought this lawsuit to recoup the benefits payments previously made to Mr. Levithan and Mr. Levithan, in turn, has filed several counterclaims for breach of contract, fraud and misrepresentation, libel and slander, intentional interference with contractual relations and bad faith against Great West.

In late October, 1992, Mark Levithan apparently again consulted Dr. Simeone at the urging of a Paul Revere Company representative. As a result of that visit, Dr. Simeone purportedly refused to certify that Mr. Levithan was disabled, diagnosed him as suffering from depression and referred him to a psychiatrist for further treatment. Mr. Levithan has not seen Dr. Simeone since the October, 1992 visit.

Thereafter, in January, 1994, Dr. Simeone agreed to testify at the trial of this matter as not only a fact witness but also as a medical expert witness on behalf of Great West Life. Plaintiff's counsel therefore endeavored to schedule Mr. Levithan for an "independent" medical examination with Dr. Simeone. Mr. Levithan's counsel has refused to produce him for that examination and has also forwarded correspondence directly to Dr. Simeone indicating that Mr. Levithan would not consent to Dr. Simeone's divulging any information, testifying or offering any opinion as to his physical condition based upon information given to Dr. Simeone by Mr. Levithan. It is this dispute over Dr. Simeone's proposed examination and testimony which forms the basis for the pending motions.

## II. *DISCUSSION*

It is, of course, axiomatic that since jurisdiction in this matter is premised upon the diverse citizenship of the parties that both Federal procedural and Pennsylvania substantive law are to be applied herein. *See: Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Nationwide Insurance Co. v. Resseguie,* 980 F.2d 226, 229 (3rd Cir.1992). That having been said, we note that under Fed.R.Civ.P. 35(a),

"When the mental or physical condition (including the blood group) of a party or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

Thus, an order for the physical or mental examination of a party is not granted as of right and when the matter is contested, it is addressed to the sound discretion of the trial court. 8 Wright and Miller, *Federal Practice and Procedure: Civil* § 2234, 671–672 (1970). The movant has no absolute right to an examination by a particular physician of his choice. *Stinchcomb v. U.S.,* 132 F.R.D. 29, 30 (E.D.Pa.1990). However, unless the patient involved has a valid objection to the selection, the examination should be conducted by a physician of the movant's choosing. *See: Liechty v. Terrill Trucking Company,* 53 F.R.D. 590, 591 (D.Tenn.1971).

In this case, Defendant–Counterclaim Plaintiff has invoked the provisions of 42 Pa.C.S.A. § 5929 as grounds for his motion to preclude Dr. Simeone from acting as Great West's expert witness in this case and to obviate the necessity for him to submit to another medical examination by and with his

former neurosurgeon. That statute provides:

> "No physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries."

As the language of the statute itself makes clear, Pennsylvania's statutory protection of the physician-client relationship is severely circumscribed. *MacDonald v. U.S.,* 767 F.Supp. 1295, 1299 (M.D.Pa.1991), *aff'd,* 983 F.2d 1051 (3rd Cir.1992). Indeed, by filing a personal injury action, the plaintiff-patient waives the privilege and, in effect implicitly consents to the disclosure of medical records. *O'Boyle v. Jensen,* 150 F.R.D. 519, 523 (M.D.Pa.1993); *Premack v. J.C.J. Ogar, Inc.,* 148 F.R.D. 140, 145 (E.D.Pa.1993); *Moses v. McWilliams,* 379 Pa.Super. 150, 161, 549 A.2d 950, 956 (1988), *appeal denied,* 521 Pa. 631, 558 A.2d 532 (1989).

It has, however, been held that, although 42 Pa.C.S.A. § 5929 speaks in terms of "... any information acquired in attending the patient, the statute is limited to communications received from the patient and thus the act does not prevent disclosure of information learned by a doctor through examination or observation." *Miller v. Colonial Refrigerated Transportation, Inc.,* 81 F.R.D. 741, 743 (M.D.Pa.1979); *In Re Phillips Estate,* 295 Pa. 349, 145 A. 437 (1929); *Panko v. Consolidated Mutual Insurance Co.,* 423 F.2d 41 (3rd Cir.1970); *Woods v. National Life and Accident Insurance Co.,* 347 F.2d 760 (3rd Cir.1965).

■ Applying these principles to the case at bar, we are hard-pressed to find any merit to either of the parties' protective order motions. To be sure, the record is devoid of any indication as to what information, if any,

Dr. Simeone may divulge and it is therefore impossible to determine whether the doctor's testimony will be based upon his own examinations or observations or upon statements or representations made to him by Mr. Levithan in the course of their physician-patient relationship. It is equally unclear as to whether the doctor's potential testimony will or may involve "information ... which shall tend to blacken the character of the patient ..." Accordingly, we find no basis upon which to order Mr. Levithan or his counsel to refrain from conveying to Dr. Simeone Mr. Levithan's refusal to waive his rights under 42 Pa.C.S.A. § 5929.[1]

We likewise decline to order Great West to refrain from employing Dr. Simeone as its expert witness in this matter. While Defendant makes a valid argument that Dr. Simeone may well give "interested" testimony in this case as a consequence of his first "failed" surgery on Mr. Levithan, the extent (if any) of Dr. Simeone's bias and interest may be properly and fully explored by defense counsel in their cross-examination of Dr. Simeone. Ultimately, the credibility of any witness, a physician included, is to be determined by the trier of fact. *MacDonald v. U.S., supra,* 767 F.Supp. at 1299 quoting *Holtzman v. Zimmerman,* 47 Pa.D. & C.3d 608, 628 (1988). We shall therefore direct Mr. Levithan to make himself available for examination on a date and at a time of mutual convenience to the parties within thirty days of the date of this Memorandum and Order. In all other respects, the motions of these parties are denied pursuant to the attached order.

### ORDER

AND NOW, this 16th day of February, 1994, upon consideration of Plaintiff's Emergency Motion for Protective Order and Order to Compel Defendant to Submit to a Medical Examination and Defendant's Cross–Motion for Protective Order and in Limine to Preclude Plaintiff from Employing Frederick A.

---

1. In so holding, we likewise cannot find that physician-patient confidentiality was waived by the filing of the instant lawsuit. Again, this action was filed by Great West—not Levithan, to recover benefits paid—not personal injuries.

Thus, although it is obvious that by the very nature of this action Mr. Levithan's physical condition is at issue, this case does not fall within the implied waiver exception set forth in the foregoing statute.

Simeone, M.D. as its Expert Witness, it is hereby ORDERED that Plaintiff's Motion for Protective Order and Defendant's Cross–Motion for Protective Order and in Limine are DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Defendant to Submit to Medical Examination is GRANTED and Defendant is DIRECTED to submit to a medical examination by Frederick A. Simeone, M.D. at a date and time of mutual convenience to all concerned but in no event later than thirty (30) days from the entry date of this Memorandum and Order.