Lisa SIMPSON, Plaintiff,

v.

UNIVERSITY OF COLORADO, Boulder, through its Board, the Regents of the University of Colorado, a body corporate, Defendant.

Anne Gilmore, Plaintiff,

v.

University of Colorado, Boulder, through its Board, the Regents of the University of Colorado, a body corporate, Defendant.

Nos. CIV.A. 02–RB–2390(CBS),
03–RB–2495(CBS).

United States District Court,
D. Colorado.

Feb. 10, 2004.

Baine P. Kerr, Christopher Wallace Ford, Kimberly M. Hult, Hutchinson, CO, Black and Cook LLC, Boulder, CO, for Plaintiffs.

Stephen S. Dunham, Morrison & Foerster, United States District Court, Michael W. Schreiner, University of Colorado Office of University Counsel, Kay J. Rice, Cooper & Clough, Denver, CO, for Defendant.

## ORDER ON DISCOVERY MOTIONS

SHAFFER, United States Magistrate Judge.

Our legal system, while not perfect, is effective because it fundamentally relies upon the interplay of zealous advocates, neutral judicial officers, and impartial finders of fact. *Cf. United States v. Reid,* 214 F.Supp.2d 84, 92 (D.Mass.2002). A jury trial, unlike dueling press releases, involves a search for the truth. *Bova v. Wainwright,* 674 F.Supp. 834, 835 (S.D.Fla.1987). "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive.... The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." *Taylor v. Illinois,* 484 U.S. 400, 408–09, 414–15, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) ("[t]he integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administra-

tion of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance"). *See also Polk County v. Dodson,* 454 U.S. 312, 318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ("the [legal] system assumes that adversarial testing will ultimately advance the public interest in truth and fairness").

However, the truth-seeking process that lies at the heart of a jury trial is not advanced by irrelevant evidence, prejudicial speculation or gratuitous grandstanding. *See United States v. Purdy,* 144 F.3d 241, 246 (2d Cir.1998). This realization runs throughout the Federal Rules of Civil Procedure and the Federal Rules of Evidence. For example, a party's right to obtain discovery of "any matter, not privileged, that is relevant to the claim or defense of a party," Fed.R.Civ.P. 26(b)(1), may be constrained where the court determines that the desired discovery is unreasonable or unduly burdensome given the needs of the case, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2). The Federal Rules of Civil Procedure permit a court to restrict or preclude discovery when justice requires in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed.R.Civ.P. 26(c). The court has comparable authority during the trial to exclude relevant evidence where its probative value is outweighed by the danger of unfair prejudice, confusion of issues, or misleading of the jury. Fed.R.Evid. 403.

Unfortunately, the parameters of the truth-finding process are not always easy to identify, particularly when raised in the context of discovery. Limitations on the discovery process necessarily conflict with the "the fundamental principle that 'the public ... has a right to every man's evidence." *See Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (citation omitted).

For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man's evidence. When we come to exam-

ine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.

*Jaffee v. Redmond,* 518 U.S. 1, 10, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).

Rule 412 of the Federal Rules of Evidence illustrates the court's dilemma. That Rule provides that in a civil case, evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim of sexual misconduct may be admitted at trial only "if it is otherwise admissible under [the Federal Rules of Evidence] and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." *See* Fed.R.Evid. 412(b)(2). As the Advisory Committee Notes explain, Rule 412 "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." *See* Advisory Committee Notes to 1994 Amendments to Fed.R.Evid. 412. The same Advisory Committee Notes, however, acknowledge that Rule 412's limitations do not apply to pretrial discovery, which will be governed by Fed. R.Civ. 26. Discovery will be permitted, subject to a protective order, where "the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery." *Id. See also Giron v. Corrections Corp.,* 981 F.Supp. 1406, 1407 (D.N.M.1997) ("[a]lthough Rule 412 controls the admissibility of evidence rather than its discoverability, ... the Court will impose

certain restrictions on discovery to preclude inquiry into areas which will clearly fail to satisfy Rule 412(b)(2)'s balancing test"); *Herchenroeder v. Johns Hopkins University Applied Physics Laboratory,* 171 F.R.D. 179, 181 (D.Md.1997) (noting that Rule 412 governs the admissibility of evidence at trial, and not discoverability of information during pretrial proceedings).

The instant case has spawned numerous discovery disputes and hearings. In the court's view, many of those disputes were unnecessary and did not materially advance the interests of either party. I am also aware that both sides have been willing to "litigate" the merits of their respective positions outside the confines of the courtroom.[1] This matter comes before the court, once again, on pending discovery motions. On December 17, 2003, Defendant University of Colorado ("University") filed a Motion to Compel Plaintiff's Diary. Defendant filed on December 19, 2003, a Motion to Compel Rule 35 Examination and Request for Forthwith Hearing. On January 13, 2004, Defendant filed a Motion to Compel Answers to Interrogatories and Request for Production of Documents Relating to Medical Information/Records and Therapy Records. I have reviewed each of the parties' motions and responses, the entire case file and applicable law. The court heard oral argument on each of these motions during a hearing on January 27, 2004. My normal preference is to decide discovery motions through oral rulings from the bench. However, given the sensitivity of the pending motions, I believe that counsel and their clients, particularly Ms. Simpson, are entitled to a precise explanation of the court's rulings.

## FACTUAL BACKGROUND

Plaintiff Simpson alleges in her Complaint that Defendant violated Title IX of the Edu-

---

**1.** Both sides have been quick to invoke "privacy interests" when that argument would advance their particular interests. Regardless of their parochial perspective on "privacy," counsel are reminded of the restrictions imposed by Rule 3.6(a) of the Colorado Rules of Professional Conduct, which provides that

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make any extrajudicial statement that a reasonable person would expect to be dis-

seminated by means of public communication if the lawyer knows or reasonably should not that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

*Cf. United States v. McVeigh,* 931 F.Supp. 756 (D.Colo.1996) (suggesting that reliance upon the professionalism and integrity of counsel is the preferred means for assuring a fair and impartial trial).

cational Amendments of 1972, 20 U.S.C. § 1681(a), which prohibits educational institutions that receive federal funding from discriminating against students "on the basis of sex." Simpson contends that the University of Colorado, through its Athletic Department and football program, has had actual knowledge of, and has remained deliberately indifferent to, repeated acts of sexual harassment by football players and football recruits. Plaintiff maintains that because the University of Colorado has failed to take appropriate measures, she was sexually assaulted and sexually harassed by football players and football recruits during an official campus visit by recruits on December 7–8, 2001. Simpson further alleges that:

> The sexual assaults and harassment of Plaintiff have had a devastating impact on her life and education. She has suffered from feelings of terrible violation, humiliation and a loss of personal security and self-confidence.

> \*    \*    \*    \*    \*    \*

> As a direct and proximate result of the 2001 Assaults, Plaintiff has been subjected to significant, severe and ongoing emotional distress and mental anguish and her studies and education have suffered substantially....

> \*    \*    \*    \*    \*    \*

> In addition, Plaintiff has suffered and continues to suffer from considerable anxiety regarding her safety and well-being while on the University of Colorado campus and elsewhere.

*See* Complaint at ¶¶ 37, 53 and 54.

On January 13, 2003, Defendant University moved to dismiss this action arguing that the allegations in Plaintiff's complaint are not sufficient to state a claim for relief under Title IX. Specifically, Defendant maintained that Simpson's "allegations do not, and cannot, establish that the University was deliberately indifferent to sexual harassment about which it had actual knowledge," and that "Plaintiff has not alleged facts which support her contention that she was deprived of equal access to the University's resources and educational opportunities." *See* Board of Regents' Motion to Dismiss at 2. Defendant

withdrew its Motion to Dismiss on January 6, 2004, stating its intention to file a dispositive motion for summary judgment and its belief that the law and facts presented in such a motion would establish "that there are no genuine issues of material fact and the University is entitled to judgment as a matter of law."

## ANALYSIS

### (1) Defendant's Motion to Compel Plaintiff's Diary

The University has moved to compel production of Plaintiff's diary, suggesting that the "evidentiary value of her diary cannot be overstated." *See* Defendant's Motion to Compel at 4. Defendant argues that Simpson's contemporaneous diary entries are directly relevant to her claim for emotional distress and may disclose "other stressors or traumas in Plaintiff's life unrelated to the University's action which are responsible for her alleged damages." *Id.* at 5. In response to an informal request, on August 12, 2003, Plaintiff Simpson voluntarily produced diary excerpts that "describe the events of December 7–8, 2001, and Ms. Simpson's reactions to those events." *See* Exhibit B attached to Plaintiff's Response in Opposition to Defendant's Motion to Compel Plaintiff's Diary. Defendant has now moved for production of additional entries. Plaintiff opposes that request, claiming that all non-disclosed diary entries "relate to [Ms. Simpson's] personal relationships with family and friends, other general discussions of life issues and concerns, and any other matters unrelated to this lawsuit." Plaintiff has submitted under seal her entire unredacted diary for the court's *in camera* review.

Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information. *United States ex rel. Schwartz v. TRW, Inc.,* 211 F.R.D. 388 (C.D.Cal.2002). To that end, Rule 26(b) permits discovery "regarding any matter ... that is relevant to the claim or defense of any party" or discovery of any information that "appears reasonably calculated to lead to the

discovery of admissible evidence." *See* Fed. R.Civ.P. 26(b)(1). *See also Williams v. Board of County Commissioners*, 192 F.R.D. 698, 702 (D.Kan.2000) (request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim or defense). Even this apparently straightforward standard provides grist for conflicting interpretation and dispute. For example, the Advisory Committee Notes to Rule 26 specifically state that discoverable information may include "other incidents of the same type" or "information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses." *See* Advisory Committee Notes to the 2000 Amendments to Rule 26. The Advisory Committee Notes also acknowledge that

> the "reasonably calculated to lead to the discovery of admissible evidence" standard ... might swallow any other limitation on the scope of discovery. Accordingly, this sentence has been amended to clarify that *information must be relevant to be discoverable, even though inadmissible,* and that discovery of such material is permitted if reasonably likely to lead to the discovery of admissible evidence. (emphasis added)

*Id.*

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 211 (D.Kan.2002) (citing *Sheldon v. Vermonty*, 204 F.R.D. 679, 690 (D.Kan.2001)). An objecting party cannot sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing. *See St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 513 (N.D.Iowa 2000).

An application of Rule 26(b)(1) must start with an explication of the specific claims and defenses asserted. In this case, Simpson asserts a violation of Title IX, which she contends has had a "devastating impact on her life and education." According to the Complaint, "[a]s a direct and proximate result of the 2001 Assaults, Plaintiff has been subjected to significant, severe and ongoing emotional distress and mental anguish and her studies and education have suffered substantially...." Apparently, Simpson will support these allegations at trial with expert testimony that she suffers from Post Traumatic Stress Disorder.

█ To establish a claim for damages under Title IX, a plaintiff must show that: (1) the defendant was deliberately indifferent to sexual harassment; (2) that the defendant had actual knowledge of that sexual harassment; and (3) that the harassment was so severe, pervasive, and objectively offensive that it deprived the plaintiff of access to the educational opportunities or benefits provided by the educational institution. *Davis v. Monroe County Board of Education*, 526 U.S. 629, 650, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). School administrators are "deemed 'deliberately indifferent' to acts of student-on-student harassment only where the [defendant's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 648, 119 S.Ct. 1661. A plaintiff must show that the alleged harassment "so undermines from the victims' education experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities.'" *Burwell v. Pekin Community High School District 303*, 213 F.Supp.2d 917, 932 (C.D.Ill.2002) (where plaintiff claimed that she suffered from post-traumatic stress disorder, held that harassment directed at plaintiff did not "undermine" or "detract" from her educational experience, since she was "clearly able to obtain an education, as she was on the honor roll and graduated with her class").

█ Plaintiff's counsel concedes that her client's diary is not privileged. Counsel also concedes that entries in Ms. Simpson's diary are relevant and discoverable to the extent that they describe the events of December 7–8, 2001, or Ms. Simpson's reaction to the

alleged sexual assaults. *See* Exhibit B attached to Plaintiff's Response in Opposition to Defendant's Motion to Compel. Accordingly, Plaintiff has produced entries that discuss the alleged assaults, describe her emotional state in the aftermath of those assaults, and discuss her post-assault adjustments to school life. In the context of discovery and Rule 26(b)(1), these entries are relevant to the parties' claims or defenses. Given Plaintiff's concessions as to relevance and her own criteria for disclosure of diary entries, I cannot summarily reject Defendant's motion as an unfounded "fishing expedition." To the contrary, I find that additional diary entries are relevant and should be produced. In the main, these additional disclosures simply address subjects or complete diary passages that Ms. Simpson has voluntarily disclosed. Accordingly, Plaintiff will be required to produce, within seven (7) calendar days of this Order, the following diary entries:

(1) Entry for January 1, 2002, at bates-stamped page J000126(B),[2] from "I want this" to "can't seem to get there"

(2) Entry for January 16, 2002, at bates-stamped pages J000129(B)–130(A), from "When will I" to "time"

(3) Entry for January 24, 2002, at bates-stamped page J000139(A), from "I am still" to "trust yourself"

(4) Entry for January 29, 2002, at bates-stamped pages J000139(B)-JOOO140(B), from "Right now I" to "my whole life go"

(5) Entry for January 29, 2002, at bates-stamped page JOOO141(A), from "I have no idea" to "life is different," and bates-stamped page JOOO141(B), from "When will that" to "there it is again"

(6) Entry for January 29, 2002, at bates stamped page JOOO142(A)-(B), from "Some day when" to "will turn out"

(7) Entry for January 29, 2002, at bates-stamped page J000145(A), from "I feel so" to "seems so pointless," and bates-

stamped page JOOO145(B)-J000146(A), from "Why am I" to "to finish something"

(8) Entry for February 4, 2002, at bates-stamped page J000148(A), from "I wonder how" to "had never happened" and from "Would I have" to "I don't know"

(9) Entry for February 4, 2002, at bates-stamped page J000148(B), from "It feels like" to "ever get back"

(10) Entry for February 4, 2002, at bates-stamped page JOOO149(A), from "No one knows" to "feel so isolated"

(11) Entry for February 16, 2002, at bates-stamped page JOOO153(A)-(B), from "You know what" to "the wrong way"

(12) Entry for February 24, 2002, at bates-stamped page JOOO157(A)-(B), from "If I had" to "not comfortable", and bates-stamped page JOOO158(A), from "with something" to "hadn't happened"

(13) Entry for March 4, 2002, at bates-stamped page J000161(A), from "I just want" to "critical of me"

(14) Entry for March 17, 2002, at bates-stamped pages JOOO167(A)-JOOO168(A), from "I just really" to "and no where else"

(15) Entry for March 31, 2002, at bates-stamped page JOOO172(A)-(B), from "I am just" to "in some way prove"

(16) Entry for April 13, 2002, at bates-stamped page JOOO175(A)-(B), from "I really want" to "where I landed"

(17) Entry for May 24, 2002, at bates-stamped page JOOO215(A)-(B), from "I don't ever" to "drinking and partying"

(18) Entry for May 24, 2002, at bates-stamped page JOOO216(B), from "This is my" to "sorry for it"

(19) Entry for May 29, 2002, at bates-stamped page JOOO220(A), from "do the good thing" to "me away"

---

**2.** As produced for the court's *in camera* review, each page of Exhibit C, attached to Plaintiff's Response, bears a single bate-stamp, but consists of two pages of Ms. Simpson's diary. For purposes of this Order, the court will designate the left side of each bates-stamped page as "A" and the right side as "B."

(20) Entry for June 8, 2002, at bates-stamped pages JOOO223(A)-JOOO224(A), from "I am scared" to "things out of me"

(21) Entry for June 16, 2002, at bates-stamped page JOOO225(A)-(B), from "Today I am" to "lot of things recently"

(22) Entry for August 22, 2002, at bates-stamped page JOOO242(A), from "completely confident" to "second guessing me"

(23) Entry for October 1, 2002, at bates-stamped page JOOO245(B), from "I am so excited" to "this is very cool"

(24) Entry for November 22, 2002, at bates-stamped page JOOO255(A), from "I have resigned" to "am unemployed," and at bates-stamped page JOOO255(B), from "I am going" to "I am thrilled"

(25) Entry for November 22, 2002, at bates-stamped page JOOO256(A)-(B), from "I am looking" to "happening to them"

(26) Entry for November 23, 2002, at bates-stamped pages JOOO258(B) and JOOO259(A), from "I didn't want" to "to my life"

(27) Entry for December 25, 2002, at bates-stamped page JOOO264(B), from "I don't know" to "classes next semester"

(28) Entry for January 2, 2003, at bates-stamped page JOOO268(B), from "Sometimes I begin" to "carry with me"

(29) Entry for January 5, 2003, at bates-stamped page JOOO300(A), from "This upcoming semester" to "my school work"

(30) Entry for January 5, 2003, at bates-stamped page JOOO301(A), from "I am very" to "with my life," and at bates-stamped pages JOOO301(B)-JOOO302(A), from "The mental phases" to "that I can be"

(31) Entry for February 3, 2003, at bates-stamped page JOOO308(A)-(B), from "I was trying" to "really love that"

(32) Entry for February 6, 2003, at bates-stamped page JOOO309(A)-(B), from "I stopped" to "was sober"

(33) Entry for February 9, 2003, at bates-stamped page JOOO310(B), from "I am thankful" to "more and more"

(34) Entry for March 16, 2003, at bates-stamped pages JOOO314(B)-JOOO315(A), from "My friends lives" to "lots of homework"

All of the above entries, like the other diary entries voluntarily produced by Ms. Simpson, will be subject to the parties' Protective Order and may not be disclosed to anyone, other than counsel and Ms. Simpson, without a prior court order.

In her Response, Plaintiff argues that her right to privacy compels an expansive application of Rule 26(c) and an order precluding any further production of her diary. While I can appreciate Ms. Simpson's desire to maintain her privacy, her counsel produced without objection, or a formal request under Fed. R.Civ.P. 34, significant excerpts from Plaintiff's diary. Defendant is certainly entitled to discovery of any relevant, non-privileged matters bearing on the claims and defenses asserted in the pleadings, and to obtain other diary entries relating to the same subjects Plaintiff's counsel has conceded are relevant and discoverable. The court's *in camera* review has identified several diary entries that are encompassed by Plaintiff's own interpretation of relevance. While the court does not frivolously ignore Ms. Simpson's concerns for her privacy, I cannot allow the Plaintiff to invoke her privacy rights both as a sword and a shield.

■ However, after reviewing *in camera* the unredacted version of Ms. Simpson's diary, I find that the balance of the diary entries are not relevant to the claims and defenses asserted in this action, and are not likely to lead to admissible evidence. The latter entries consist of observations and musings that would be typical of any college student or 20–year old confronted with the often perplexing transition from adolescence to adulthood. While a skillful advocate might conjure an argument to stretch the outer boundaries of Rule 26(b)(1) or hypothesize a

set of circumstances that would establish a remote link between Ms. Simpson's alleged emotional distress and earlier life experiences, I find that the marginal relevance of such events would be substantially outweighed by the potential harm to Plaintiff. *Cf. Williams v. Board of County Commissioners,* 192 F.R.D. 698, 703 (D.Kan.2000) (denying motion to compel where the requested information concerning plaintiff's sexual history had only marginal relevance to the claims asserted and would constitute an *unjustified* invasion of privacy). Title IX requires a causal nexus between the alleged sexual harassment and the denial of equal access to educational benefits. The vast majority of Ms. Simpson's diary entries make no reference to the events of December 7–8, 2001, and are irrelevant to the Title IX claim before the court. Even if these diary entries were remotely relevant, I find "good cause," consistent with the court's authority under Fed.R.Civ.P. 26(c), to deny Defendant's expansive request for production.

Accordingly, for the reasons stated herein and during the January 27th hearing, Defendant's Motion to Compel Plaintiff's Diary is GRANTED in part and DENIED in part.

### (2) Defendant's Motion to Compel Rule 35 Examination

■ Rule 35 of the Federal Rules of Civil Procedure permits the court to order a party to submit to a physical or mental examination by a suitably licensed or certified examiner "when the mental or physical health ... of a party ... is in controversy" and where the moving party has shown "good cause" for the requested examination. The court "shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." *See* Fed.R.Civ.P. 35(a). While Rule 35 should be construed liberally in favor of granting discovery, its application is left to the sound discretion of the court. *Eckman v. University of Rhode Island,* 160 F.R.D. 431, 433 (D.R.I.1995); *Great West Life Assurance Co. v. Levithan,* 153 F.R.D. 74, 76 (E.D.Pa.1994).

Plaintiff concedes that she has placed her mental health "in controversy" by claiming a specific psychiatric condition, Post–Traumatic Stress Disorder, and by stating her intention to present expert testimony at trial concerning her alleged emotional injuries. *Compare LeFave v. Symbios, Inc.,* 2000 WL 1644154 (D.Colo.2000) (denying Rule 35 examination where plaintiff did not allege a specific mental injury or disorder and did not claim unusually severe emotional distress). Plaintiff's Response, however, challenges Defendant's stated intention to conduct two three-hour examinations of Ms. Simpson and to explore the Plaintiff's prior sexual history. Ms. Simpson argues that Defendant has failed to establish "good cause" for such an expansive evaluation. Notably, Plaintiff's Response fails to cite a single case in support of her position.

■ Based upon my review of the applicable case law, I find that Defendant has established "good cause" for the proposed Rule 35 examination. *See Bethel v. Dixie Homecrafters, Inc.,* 192 F.R.D. 320, 322 (N.D.Ga.2000) (noting that the "factors reviewed in determining 'good cause' often merge with those requirements necessary to find that a plaintiff's mental condition is 'in controversy' "). Ms. Simpson has alleged a specific psychiatric condition or injury, and intends to offer expert testimony to support that allegation. The circumstances of this case are analogous to those in *Greenhorn v. Marriott Intern., Inc.,* 216 F.R.D. 649, 652 (D.Kan.2003), where the court found that

> the allegations made by plaintiff ... are sufficiently serious and sweeping such that the average lay person might not be able to evaluate properly the nature, extent and cause of the injuries plaintiff claims to have sustained. In such circumstances, an independent examination is appropriate.... Thus, good cause exists for permitting the mental examination of plaintiff because, without the examination, defendant would be limited to cross-examining the evaluation of plaintiff's expert.

*See also Fischer v. Coastal Towing Inc.,* 168 F.R.D. 199, 201 (E.D.Tex.1996) (without an independent examination to rebut the reports of plaintiff's expert, defendant has no way to adequately scrutinize the conclusions of plaintiff's expert); *Eckman v. University of Rhode Island,* 160 F.R.D. 431, 434 (D.R.I.

1995) (defendants established good cause for Rule 35 examination where plaintiff intended to prove severe mental injury by offering expert testimony from two therapists; held that defendants "obviously have substantial questions concerning the extent of plaintiff's emotional injuries and causation therefor").

■ While Defendant is entitled to a Rule 35 examination of the Plaintiff, this court retains considerable discretion to establish the manner, conditions and scope of the examination. *Stuart v. Burford,* 42 F.R.D. 591, 592 (N.D.Okl.1967) (noting that the court exercises full discretion in regulating examinations under Rule 35). For example, the court is not bound by Defendant's selection of a particular examining physician or psychologist. *See Tomlin v. Holecek,* 150 F.R.D. 628, 632 (D.Minn.1993) (court may appoint different physician if proposed doctor planned to use a discredited technique or one of questionable validity). Defendant proposes to have Dr. Rebecca Barkhorn, M.D., conduct the Rule 35 examination. From the record, it does not appear that Plaintiff is challenging Dr. Barkhorn's qualifications. *See Duncan v. Upjohn Company,* 155 F.R.D. 23, 26 (D.Conn.1994) ("only if plaintiff raises a valid objection to the witness, ... will the court appoint a physician different from the one proposed by the defendant"). *See also Looney v. National Railroad Passenger Corp.,* 142 F.R.D. 264, 266 (D.Mass.1992) (generally, objections based upon the potential bias or prejudice of the chosen physician will be left for trial and cross-examination).

As to Plaintiff's challenge to the proposed length of the Rule 35 examination and the potential subjects addressed during that examination, the court will not impose the restrictions requested by Ms. Simpson. *See Warrick v. Brode,* 46 F.R.D. 427, 428 (D.Del. 1969) (a Rule 35 "examining doctor is, in effect, 'an officer of the court' performing a non-adversary duty"). The court is not qualified, by training or experience, to second-guess the professional judgment of a board-certified psychiatrist with 15 years of experience. *Cf. Greenhorn,* 216 F.R.D. at 653–54 (rejecting attempt to arbitrarily limit the length of a Rule 35 examination based upon plaintiff's failure to offer "persuasive evi-

dence that the amount of time was unreasonable for a forensic psychiatric evaluation"). *See also Abdulwali v. Washington Metro Area Transit Authority,* 193 F.R.D. 10, 15 (D.D.C.2000) (finding that plaintiff had not offered any basis for limiting the Rule 35 examination and that such an arbitrary limitation would subvert the truth-finding function under Rule 35); *Hertenstein v. Kimberly Home Health Care, Inc.,* 189 F.R.D. 620, 627 (D.Kan.1999) (allowing inquiries into the plaintiff's private sexual activity if the examining physician "in his professional judgment has a need" for that information). The purpose of the Rule 35 examination is to "level the playing field" for the parties. *See Sauer v. Burlington Northern Railroad Co.,* 169 F.R.D. 120, 124 (D.Minn.1996); *Tirado v. Erosa,* 158 F.R.D. 294, 300 (S.D.N.Y.1994); *Looney,* 142 F.R.D. at 265. There is nothing in the record to suggest that Plaintiff's therapists were constrained by artificial time limits or that Ms. Simpson declared certain subjects to be off-limits during counseling sessions with her experts. Having satisfied the "good cause" requirement under Rule 35, Defendant should be permitted to conduct an evaluation sufficient to address the subjects and opinions addressed by Plaintiff's experts. Anything less would potentially undermine the very purpose for the Rule 35 examination. *See* 8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure* § 2239 (1994) (noting that a Rule 35 examination is "part of an objective search for truth rather than an adversary proceedings").

While I will permit a Rule 35 examination and allow Dr. Barkhorn to exercise her professional judgment, I cannot disregard Ms. Simpson's legitimate privacy interests. Accordingly, any materials or information disclosed to Dr. Barkhorn in preparation for or during the Rule 35 examination will be subject to a protective order. Absent a written order from the court, such materials and information may be disclosed only to counsel for the parties and Ms. Simpson. Similarly, any written report or evaluation materials prepared by Dr. Barkhorn may only be provided or disclosed to counsel for the parties and Ms. Simpson, absent a written order by

the court. *See Hertenstein,* 189 F.R.D. at 627.

Accordingly, Defendant's Motion to Compel Rule 35 Examination is GRANTED. The court will require Ms. Simpson to participate in a Rule 35 examination, the scope of which shall be limited to information and evaluation reasonably related to Plaintiff's claim of emotional or psychological injury as an element of her damages resulting from Defendant's alleged violation of Title IX. This Rule 35 examination may include recognized and appropriate psychological testing.

*(3) Defendant's Motion to Compel Answers to Interrogatories and Request for Production of Documents Relating to Medical Information/Records and Therapy Records*

Defendant has moved to compel discovery relating to Ms. Simpson's past medical treatment and her medical and therapy records. The University argues that the requested information is relevant to Plaintiff's claim for emotional distress damages and that Ms. Simpson has waived any applicable privileges by asserting that claim. Specifically, the University requests an order directing Plaintiff to execute releases "so Defendant can obtain complete medical records for the past five years, that Plaintiff fully and completely answer Defendant's interrogatory regarding health care providers, and that Plaintiff execute a release(s) so that Defendant can obtain Dr. Kramer's complete counseling records and any other psychological counseling records in the past five years."

In response, Ms. Simpson states that she has produced the unredacted records of her current therapist and records of her participation in a support and counseling group, as well as a substantial number of unredacted records from her former therapist, Sherry Kramer, Ph.D., who treated Ms. Simpson during the period shortly after December 8, 2001. However, Plaintiff declined to produce certain portions of Dr. Kramer's counseling records which Ms. Simpson contends "address issues that are not properly discoverable by CU." *See* Plaintiff's Response to Defendant's Motion to Compel Answers at 4. Dismissing Defendant's motion as a "fishing

expedition," Plaintiff argues that she has withheld documents that are not subject to any waiver of the psychotherapist-patient privilege or not properly discoverable as relevant materials.

▇▇▇▇ Federal common law recognizes a psychotherapist-patient privilege. *Jaffee v. Redmond,* 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). However, that privilege is not absolute and may be waived. *Id.* at 15, n. 14, 116 S.Ct. 1923. *See also Fox v. Gates Corp.,* 179 F.R.D. 303, 306–07 (D.Colo.1998). By asserting a specific psychological condition and offering the expert testimony of her treating therapist, Simpson has waived the psychotherapist-patient privilege for purposes of this action. *Cf. Sarko v. Penn–Del Directory Co.,* 170 F.R.D. 127, 130 (E.D.Pa. 1997) (holding that plaintiff had waived the privilege by claiming that she suffered from clinical depression and by placing her confidential communications with her psychotherapist directly at issue); *Vann v. Lone Star Steakhouse & Saloon,* 967 F.Supp. 346, 349–50 (C.D.Ill.1997) (plaintiff waived her privilege by placing her mental condition at issue and by disclosing her therapist as an expert witness who will give testimony at trial).

> The court's decision is based primarily on its concern that the discovery process be *fair to both parties,* so that each side is able to present an effective and complete case to the jury.... The court recognizes that [plaintiff] has a privilege to keep confidential all of her conversations with her therapist; instead, the court holds that [plaintiff] *waived* that privilege by seeking compensatory damages for injuries to her emotional health.

*Doe v. City of Chula Vista,* 196 F.R.D. 562, 569 (S.D.Cal.1999).

The cases cited in Plaintiff's Response are readily distinguishable. Unlike the present case, in *Fritsch v. City of Chula Vista,* 187 F.R.D. 614, 632–33, *modified on other grounds,* 196 F.R.D. 562 (S.D.Cal.1999), the court found no waiver of the psychotherapist-patient privilege, but also acknowledged that the plaintiff in that case was not alleging a psychiatric injury as a result of the defendant's conduct and did not intend to offer

expert testimony regarding her emotional distress. Similarly, in *Fitzgerald v. Cassil,* 216 F.R.D. 632, 639–40 (N.D.Cal.2003), the court limited discovery where the plaintiffs had not alleged a specific psychiatric injury or unusually severe emotional distress, had not conceded their mental condition was "in controversy," and did not intend to rely on any treating psychotherapist or other expert to prove their emotional distress claim.

I realize that "a psychiatrist's ability to help her patients 'is completely dependent upon [the patients'] willingness and ability to talk freely.'" *Jaffee,* 518 U.S. at 10–11, 116 S.Ct. 1923 (citations omitted). I will presume that Plaintiff's sessions with her therapists have been characterized by this same willingness and ability to speak freely. However, it is illogical to suggest that Defendant is entitled to "level the playing field" by obtaining an independent medical examination, while simultaneously arguing that the examining doctor's access to potentially significant information will be restricted. There is nothing in the record to suggest that Plaintiff's testifying therapist labored under similar constraints in reaching her diagnosis. By producing all of her current therapist's records and 95% of Dr. Kramer's therapy records, Ms. Simpson implicitly concedes that she has waived the psychotherapist-patient privilege.[3] Although Plaintiff invites the court to review *in camera* those portions of Dr. Kramer's records that have been withheld, I will decline that request. *Cf. Motley v. Marathon Oil Co.* 71 F.3d 1547, 1551–52 (10th Cir.1995) (whether to conduct an *in camera* review is left to the sound discretion of the court); *In re Vargas,* 723 F.2d 1461, 1467 (10th Cir.1983) (trial court did not abuse its discretion in declining to conduct an *in camera* review after determining that the documents in question were not privileged). Having determined that Ms. Simpson has waived the psychotherapist-patient privilege, an *in camera* review of the balance of Dr. Kramer's records is unnecessary. *See also Sithon Maritime Co. v. Holiday Mansion,* 1998 WL 182785 *10 (D.Kan.1998) (while the court may review documents *in camera* to determine whether a privilege applies, the party requesting such a review must make some initial, factual showing that the privilege in fact applies).

■ Ms. Simpson has also objected to the pertinent discovery requests on grounds of relevance. Once again, the court's relevancy analysis must be guided by the specific claims and defenses asserted by the parties. Rule 26 permits discovery of any information "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). To the extent that Ms. Simpson has alleged that "as a direct and proximate result of the 2001 Assaults, [she] has been subjected to significant, severe and ongoing emotional distress and mental anguish and her studies and education have suffered substantially," I find that Defendant is entitled to discover the names of therapists who have treated Ms. Simpson during the period from January 1999 through the present, and to obtain therapy records for the same period. This time period encompasses Ms. Simpson's last year of high school and her years of enrollment at the University of Colorado. Without some greater showing by Defendant, I believe that any therapy records preceding that time period would be of such marginal relevance that the potential harm occasioned by disclosure outweighs the presumption in favor of broad discovery. *Cf. Williams,* 192 F.R.D. at 703. I also find that Defendant is entitled to discovery of other medical records for the same period of time, to the extent those medical records specifically reference or describe Ms. Simpson's emotional or psychological condition. The names of any physicians who prepared those records should also be disclosed. However, given that the Complaint does not allege physical injury, I do not believe that other medical records relating to Ms. Simpson would be relevant. I also do not believe the University is entitled to discover the names of medical physicians who treated Ms. Simpson for physical injuries or conditions unrelated to the claims or allegations in this case. Any documents produced to Defendant as a result of this

---

3. I also note that Dr. Kramer is referenced in those portions of Ms. Simpson's diary that were voluntarily disclosed to the University under a protective order.

Order shall be subject to the parties' Protective Order.

Accordingly, Defendant's Motion to Compel Answers to Interrogatories and Request for Production of Documents Relating to Medical Information/Records and Therapy Records is GRANTED in part and DENIED in part.